SUMMONS ISSUED
FILED
CLERK

PRYOR CASHMAN, LLP
Robert J. deBrauwere (rdebrauwere@pryorcashman.com)
Benjamin K. Semel (bsemel@pryorcashman.com) 2012 AUG 24 PM 12: 32
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
*Attorneys for Plaintiff*

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

BIANCO, J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

5381 PARTNERS LLC

    *Plaintiff,*

-against-

SHAREASALE.COM, INC.

    *Defendants.*

CV 12- 4263
CIV. ( )

TOMLINSON, M.J.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

    Plaintiff 5381 Partners LLC ("5381"), by and through its attorneys Pryor Cashman LLP, alleges against Defendant Shareasale.com, Inc. ("SAS") as follows:

INTRODUCTION

    1.    This action involves claims for fraud, conversion, breach of contract and unjust enrichment in connection with more than $100,000 in fraudulent commissions and payments taken from 5381 based upon nonexistent sale transactions. In or about 2005, 5381 entered into an agreement with SAS whereby SAS marketed 5381's software products on the Internet. SAS arranged the placement of advertisements on various websites and arranged the payment of commissions to itself and those third-party websites based upon sales generated. In addition to commissions on legitimate sales, over a six-year period, SAS took over $100,000 in fraudulent commissions from 5381 based upon transactions that had not in fact taken place.

## PARTIES

2. 5381 is a Delaware Limited Liability Company, with a principal place of business at 1476 Deer Park Avenue, North Babylon, NY 11703..

3. On information and belief, SAS is an Illinois corporation that operates online and nationwide, with a principal office at 15 W. Hubbard St., Suite 500, Chicago, IL 60654

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the plaintiff and the defendants.

5. On information and belief, this Court has general and specific personal jurisdiction over SAS in that SAS does business in this judicial district, derives substantial revenue from this judicial district by engaging in an extensive, systematic and continuous course of conduct within this judicial district, and because the subject claims arise from acts resulting in injury and damages to Plaintiff within this judicial district.

6. The venue of this action is properly laid in this District pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

7. 5381 sells popular consumer software products, including the Internet security suite "Defender Pro" and the DVD media utility software "123 Copy DVD" (the "5381 Software").

8. Since 2002, retail sales of the 5381 Software have been more than $65 million.

9. On information and belief, SAS is in the business of selling online advertising. SAS matches "Merchants" (entities with products or services that they wish to advertise online)

with SAS "Affiliates" (entities willing to place Merchant advertising on their websites). When a consumer "clicks through" the website of an SAS Affiliate and makes a purchase at a Merchant website, SAS pays the Affiliate an agreed-upon commission and SAS pays itself an additional sum equal to 20% of the commission paid to the SAS Affiliate.

10. On or about 2005, Plaintiff entered into an agreement with SAS to place advertisements online for Defender Pro and 123 Copy DVD (the "Agreement"). Over the ensuing years, SAS invoiced and billed Plaintiff for commissions on "clicks" (when a consumer clicks on an advertisement and is taken to the Merchant website) and transactions that SAS claimed to be under the Agreement.

11. On or about April 26, 2012, Plaintiff became aware that it had been fraudulently invoiced and had paid over $100,000 in commissions to SAS and SAS Affiliates for "clicks" and transactions that never occurred. (the "Fraudulent Commissions")

## CLAIM FOR FRAUD

12. Plaintiff incorporates the allegations contained in paragraphs 1 through 11 above as if fully set forth herein.

13. Upon information and belief, beginning in 2005, SAS transmitted numerous different invoices (the "Fraudulent Invoices") to Plaintiff that claimed commissions on "clicks" and transactions that never took place (the "Fraudulent Commissions").

14. Upon information and belief, the Fraudulent Invoices falsely stated the transactions that had occurred with respect to Plaintiff's advertising and what commissions were due to SAS, and constituted material misrepresentations of fact.

15. Upon information and belief, SAS had knowledge of the falsity of the Fraudulent Commissions and the falsity of the representations in the Fraudulent Invoices.

16. Upon information and belief, SAS intentionally issued the Fraudulent Invoices with the intent that SAS rely upon them in allowing the payment of the Fraudulent Commissions to SAS.

17. Upon information and belief, the Fraudulent Commissions were interspersed between legitimate transactions in the Fraudulent Invoices, and Plaintiff justifiably relied on these invoices in allowing payment of more than $100,000 in Fraudulent Commissions, being damaged thereby in an amount exceeding $100,000 to be determined at trial.

18. SAS' fraudulent conduct constitutes willful and wanton disregard for Plaintiff's rights, and Plaintiff is entitled to punitive damages in an amount to be determined at trial of this case but no less than $300,000.

## CLAIM FOR BREACH OF CONTRACT

19. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 18 as if fully set forth herein.

20. The Agreement specifically defines an SAS Affiliate as "a site that is rewarded for a **legitimate** sale, lead, click, or other measurable action by a Visitor." (emphasis added)

21. The Agreement further defines a "sale commission" as "the Payout [the Merchant] agrees to pay for Visitors referred to [the Merchant] Web site **that results in a sale of a product or service**." (emphasis added)

22. The Agreement further provides that "Affiliates shall earn a Commission **on authorized transactions when a sale is placed by a customer** who follows a Link from the Affiliate's site to the Merchant's site. **The Merchant will only pay Commission on Qualifying Sales** subject to resolution of all outstanding Voids." (emphasis added)

23. While there is no definition of "Qualifying Sales," the Agreement defines

"Qualifying Revenues" as "**revenues derived by the Merchant from authorized sales**, excluding costs for shipping, handling, gift-wrapping, taxes, gift certificates, service charges, credit card processing fees, charge backs, returns and bad debt." (emphasis added)

24. The Agreement further provides that "SHAREASALE.COM will provide support for the Service as indicated on the SHAREASALE.COM Web site." The SHAREASALE.COM website, as incorporated into the Agreement, in turn states the following:

*What kind of fraud prevention do you have?*

We have many automated tools in place to alert us to possible fraud. Our team also monitors the activities of merchants and affiliates alike, to make sure that there is no suspicious activity. ALL checks are reviewed before they are sent, and fraudulent users will NOT be paid ANY commissions. The fact is that most people who attempt to fraud merchants or affiliates, are not very good at it, and are easy to spot, catch, and terminate from the network. We have a ZERO tolerance policy for fraud, no exceptions, no second chances.

25. The Agreement also provides that:

SHAREASALE.COM agrees to indemnify, defend, and hold harmless Merchant and its affiliates, officers, directors, employees and agents from and against any and all liability, claims, losses, damages, injuries or expenses (including reasonable attorneys' fees, expert witness fees and costs) directly or indirectly arising from or relating to SHAREASALE.COM's acts or omissions in performance of the Services or its breach of this Agreement.

26. SAS breached the Agreement by, *inter alia*, paying the Fraudulent Commissions, which were not connected to legitimate sales, leads, clicks, or other measurable actions by Visitors under the Agreement, were not based on Qualifying Sales or Qualifying revenues under the Agreement, and were not authorized transactions based on sales placed by customers.

27. SAS further breached the Agreement by, *inter alia*, not properly monitoring the activities of the SAS Affiliates connected to the Fraudulent Commissions, not making sure that no suspicious activity took place, not reviewing checks before they were sent, and not ensuring that fraudulent users would not be paid any commissions.

28. SAS' breaches of the Agreement proximately resulted in the payment of the Fraudulent Commissions and have damaged Plaintiff in an amount exceeding $100,000 to be determined at trial.

## CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

29. Plaintiff incorporates the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30. Pursuant to the covenant of good faith and fair dealing implied in every contract under New York law, a party to a contract shall not do anything that will have the effect of destroying or injuring the other party's right to receive the benefits of the contract.

31. By their acts and omissions set forth herein, SAS billed and collected moneys from Plaintiff for commissions that never occurred, thereby breaching the covenant of good faith and fair dealing implied therein.

32. As a result of the foregoing, Plaintiff has suffered damages in an amount exceeding $100,000 to be determined at trial, plus interest and costs, including reasonable attorneys' fees.

## CLAIM FOR CONVERSION

33. Plaintiff incorporates the allegations contained in paragraphs 1 through 32 above as if fully set forth herein.

34. Plaintiff is the legal owner of the Fraudulent Commissions that were improperly transferred to SAS and/or its Affiliates, and has an absolute and unconditional right to these funds.

35. SAS has no right, entitlement to, or interest in, the Fraudulent Commissions that Plaintiff was deceived into transferring to SAS.

36. Plaintiff has demanded that SAS return the Fraudulent Commissions, but SAS has refused to return the sums in full.

37. SAS' continued possession and refusal to return the Fraudulent Commissions to Plaintiff constitutes an unauthorized exercise of dominion and control over Plaintiff's property.

38. SAS is liable to Plaintiff for all losses and damages caused by its wrongful conduct, including, without limitation, the Fraudulent Commissions it refuses to return.

39. SAS' refusal to return the funds to Plaintiff constitutes willful and wanton disregard for Plaintiff's rights. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined at trial of this case but no less than $300,000.

## CLAIM FOR UNJUST ENRICHMENT

40. Plaintiff incorporates the allegations contained in paragraphs 1 through 39 above as if fully set forth herein.

41. SAS has received the benefit of the Fraudulent Commissions at the expense of Plaintiff, and knowingly accepted and has continued to retain that benefit under the above circumstances that make it inequitable for SAS to do so.

42. SAS has been unjustly enriched by the taking of the Fraudulent Commissions at the expense of Plaintiff, and continues to retain those benefits belonging to Plaintiff, and Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

43. WHEREFORE, Plaintiff prays that this Court:

    A) Find Defendant liable for each of the claims alleged herein;

    B) Award damages adequate to compensate Plaintiff for its injuries and to disgorge any profits or unjust enrichment obtained by Defendant;

    C)    Find that the Defendant's conduct has been willful and deliberate, and thereby award Plaintiff more than $300,000 in punitive damages, costs, expenses, and attorneys' fees, as allowed under the asserted claims;

    D)    Award Plaintiff such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
        August 24, 2012

PRYOR CASHMAN LLP

By: _____
Robert J. deBrauwere
Benjamin K. Semel
Attorneys for Plaintiff
7 Times Square
New York, NY 10036
212-421-4100